1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**
9          **EASTERN DISTRICT OF CALIFORNIA**
10
11   ARTURO ALEJANDREZ,                      )   Case No.: 1:12-cv-00190-AWI-JLT
                                              )
12          Petitioner,                       )   FINDINGS AND RECOMMENDATIONS TO
                                              )   DENY PETITION FOR WRIT OF HABEAS
13   v.                                       )   CORPUS (Doc. 1)
                                              )
14   ANTHONY HEDGPETH, Warden,                )
                                              )   ORDER DIRECTING THAT OBJECTIONS BE
15          Respondent.                       )   FILED WITHIN 21 DAYS
                                              )
16   _____      )

17   Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28

18   U.S.C. § 2254.

19                          **PROCEDURAL HISTORY**

20          Petitioner is in custody of the California Department of Corrections and Rehabilitation after

21   having been convicted by a jury in 2010 of: (1) shooting from a car (Pen. Code § 12034(c)); (2) assault

22   with a semiautomatic firearm (Pen. Code § 245(b)); (3) being a felon in possession of a firearm (§

23   12021(a)(1)); (4) possessing methamphetamine (Health & Saf. Code § 11377(a)).  (Lodged

24   Documents ("LD") 4).  He was sentenced to a prison term of ten years, four months plus and an

25   indeterminate sentence of 25 years-to-life.  Id.

26          After his conviction, Petitioner appealed to the California Court of Appeals, Fifth Appellate

27   District (the "5th DCA"), which affirmed Petitioner's conviction.  (LD 4).   Petitioner then filed a

28

                                             1

1   petition for review in the California Supreme Court which was summarily denied on February 16,

2   2011.  (LD 6).

3          In this current action, Respondent concedes that ground three in the petition has been fully

4   exhausted, but maintains that the remaining four claims for relief are unexhausted.  (Doc. 14, p. 9).

5                                    **FACTUAL BACKGROUND**

6   The Court adopts the Statement of Facts in the 5th DCA's unpublished decision[1]:
    Elita Arredondo drove Alejandrez, her boyfriend (later her husband), to Las Palmas Masonic

7   Center in Fresno on the night of May 24, 2008, to pick up their friend, Yvette Loya. Loya was
    attending a wedding reception there. Arredondo parked near the front entrance. Alejandrez got

8   out of the car. Loya waved to him through the glass of the entranceway, then disappeared into
    the building to say goodbye to her family.

9
    While he was waiting for Loya to return, Alejandrez became involved in an argument with

10  Esperanza Garcia. Garcia and Annabell Valles were the parties who had gotten married that
    day. Someone asked Garcia to let Alejandrez in, but she refused because Alejandrez did not

11  have an invitation and Garcia did not know him. Garcia went outside and told Alejandrez to
    leave. She also asked a security guard to remove him. Alejandrez said, "[M]ake me leave." He

12  called Garcia a "dyke bitch," among other things. Garcia went back in the building, but by this
    time a crowd of 10 to 15 wedding guests had gathered outside, angered by the slurs Alejandrez

13  had used. Alejandrez continued the argument with the guests. Guests yelled to Alejandrez that
    he should leave. Some people present heard Alejandrez shout "DLG" and yell that his name was

14  "Wolfy," although Alejandrez later denied doing so. DLG stands for Dog Life Gangsters,
    a subgroup of the Bulldogs gang, of which Alejandrez was once a member. Security guards

15  began trying to corral the guests back into the building. Alejandrez later claimed he believed
    the crowd was attacking him, and that one member of it took off his jacket and assumed a

16  fighting stance while others closed in around him. Someone was pounding on Arredondo's car.

17  Alejandrez pulled a gun from his waistband, a Walther semiautomatic pistol. He waved it in
    the air and pointed it at the crowd of wedding guests. As he did so, guests heard him say "this

18  is DLG" and tell the crowd to get back. Again, he later denied saying anything about DLG.
    The wedding guests started moving into the building. A security guard saw Alejandrez fire

19  a few shots. A bullet hit a parked car. Then Alejandrez got into the back seat of Arredondo's car,
    on the passenger side. As Arredondo drove away, the wedding guests all went into the

20  building, but one security guard remained outside. Alejandrez reached out the window and
    over the car's roof and fired more shots toward the building.

21  One shot fired from the car hit the security guard's leg. An ambulance took him to a hospital.

22  An emergency room doctor removed the bullet using local anesthesia and then released the
    guard. The guard received follow-up treatment for the wound for about a year.

23
    Police found Alejandrez and Arredondo still in the car the same night. The gun was in his

24  waistband and gunshot residue was on his hands. A spent shell casing was found in the car. It
    was of the same type as eight more spent shell casings located at the scene of the shooting and

25  the live rounds that were in the gun. Also found in the car were a small scale and a plastic bag
    containing some smaller bags and a white powder later identified as methamphetamine.

26  Alejandrez admitted the gun and the drugs belonged to him.

27

28  ---

    [1] The 5th DCA's summary of the facts in its unpublished opinion is presumed correct.  28 U.S.C. §§ 2254(d)(2), (e)(1).
    Thus, the Court adopts the factual recitations set forth by the 5th DCA.

1  (LD 4).

2  **DISCUSSION**

3  I.    Jurisdiction

4  Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to

5  the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the

6  United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3);  Williams v. Taylor, 529 U.S. 362, 375 n.

7  7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States

8  Constitution.  The challenged conviction arises out of the Fresno County Superior Court, which is

9  located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

10  On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

11  1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.

12  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v.

13  Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other*

14  *grounds by* Lindh, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's

15  enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore

16  governed by its provisions.

17  II.    Legal Standard of Review

18  A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless he

19  can show that the state court's adjudication of his claim: "(1) resulted in a decision that was contrary

20  to, or involved an unreasonable application of, clearly established Federal law, as determined by the

21  Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable

22  determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.

23  § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams v. Taylor, 529 U.S. at 412-413.

24  A state court decision is "contrary to" clearly established federal law "if it applies a rule that

25  contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts

26  that is materially indistinguishable from a [Supreme Court] decision but reaches a different result."

27  Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams, 529 U.S. at 405-406 (2000).

28  Consequently, a federal court may not grant habeas relief simply because the state court's decision is

3

1   incorrect or erroneous; the state court's decision must also be objectively unreasonable.  Wiggins v.

2   Smith, 539 U.S. 510, 511 (2003) (citing Williams v. Taylor, 529 U.S. at 409).

3           In Harrington v. Richter, 562 U.S. ___ , 131 S.Ct. 770 (2011), the U.S. Supreme Court

4   explained that an "unreasonable application" of federal law is an objective test that turns on "whether

5   it is possible that fairminded jurists could disagree" that the state court decision meets the standards set

6   forth in the AEDPA.  If fairminded jurists could so disagree, habeas relief is precluded.  Harrington,

7   131 S.Ct. at 786.   The Supreme Court has "said time and again that 'an *unreasonable* application of

8   federal law is different from an *incorrect* application of federal law.'" Cullen v. Pinholster, 131 S.Ct.

9   1388, 1410-1411 (2011).  Thus, a state prisoner seeking a writ of habeas corpus from a federal court

10  "must show that the state court's ruling on the claim being presented in federal court was so lacking in

11  justification that there was an error well understood and comprehended in existing law beyond any

12  possibility of fairminded disagreement." Harrington, 131 S.Ct. at 787-788.

13          The second prong of federal habeas review involves the "unreasonable determination" clause

14  of 28 U.S.C. § 2254(d)(2).  This prong pertains to state court decisions based on factual findings.

15  Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003).  Under §

16  2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's

17  claims "resulted in a decision that was based on an unreasonable determination of the facts in light of

18  the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. at 520; Jeffries v.

19  Wood, 114 F.3d at 1500.  A state court's factual finding is unreasonable when it is "so clearly

20  incorrect that it would not be debatable among reasonable jurists." Id.; see Taylor v. Maddox, 366

21  F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

22          To determine whether habeas relief is available under § 2254(d), the federal court looks to the

23  last reasoned state court decision as the basis of the state court's decision.  See Ylst v. Nunnemaker,

24  501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state

25  court decided the petitioner's claims on the merits but provided no reasoning for its decision, the

26  federal habeas court conducts "an independent review of the record...to determine whether the state

27  court [was objectively unreasonable] in its application of controlling federal law." Delgado v. Lewis,

28  223 F.3d 976, 982 (9th Cir. 2002); see Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

4

1  "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions."

2  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

3       The prejudicial impact of any constitutional error is assessed by asking whether the error had "a

4  substantial and injurious effect or influence in determining the jury's verdict."  Brecht v. Abrahamson,

5  507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)(holding that the Brecht

6  standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

7       **III.  Review of Petitioner's Claims.**

8       The instant petition itself alleges the following as grounds for relief: (1) the trial court erred in

9  refusing to bifurcate the charges and enhancements related to Petitioner's gang involvement; (2)  the

10  trial court violated Petitioner's due process rights by refusing to stay the sentence in count II; (3) the

11  trial court erred in instructing the jury on shooting from a car; (4) insufficient evidence was presented

12  that the security guard suffered great bodily injury; and (5) clerical error in the abstract of judgment.

13       A.  Failure to Bifurcate Gang Charges

14       Petitioner first contends that his constitutional rights were violated when the trial court refused

15  to bifurcate the gang-related charges and enhancements.  This contention is without merit.

16       1.  The 5th DCA's Opinion.

17  The 5th DCA rejected Petitioner's claim as follows:

18  Alejandrez made a motion to bifurcate the trial so the gang-enhancement allegations could be
   presented to the jury separately from the remainder of the case. The court denied the motion.
19  Alejandrez claims this was error.

20  A trial court is authorized to bifurcate a criminal trial if presentation of evidence on one issue
   might cause prejudice to the defendant on another issue. For instance, "unique prejudice ...
21  may ensue if the jury that determines guilt also learns of the defendant's status as a person with
   one or more prior convictions." (People v. Hernandez (2004) 33 Cal.4th 1040, 1048
22  (Hernandez ).) Evidence used to support a gang enhancement, such as predicate offenses used
   to establish a pattern of gang activity, can have this kind of prejudicial effect. (Id. at p. 1049.)
23  To show that a motion to bifurcate should be granted, a defendant must " 'clearly establish that
   there is a substantial danger of prejudice....' " (Id. at p. 1051.) We review the trial court's
24  decision not to bifurcate for an abuse of discretion. (Id. at pp. 1048, 1051.)

25  We agree with the People's view that the court did not abuse its discretion. Alejandrez
   requested that the gang enhancements be tried separately from the substantive offenses of
26  which he was accused, but he never requested that the gang offense, count five, be separately
   tried. Generally speaking, the evidence supporting the gang enhancements and the evidence
27  supporting the gang offense would be cross-admissible. Where evidence supporting a gang
   enhancement is also admissible to prove guilt of an offense, "any inference of prejudice would
28  be dispelled, and bifurcation would not be necessary." (Hernandez, supra, 33 Cal.4th at p.
   1050.) Alejandrez does not argue that the court should have proposed on its own motion to

5

separate the trial of the gang offense from the trial of the other offenses or that his trial counsel afforded him ineffective assistance by failing to request that procedure.

Alejandrez argues in his reply brief that some of the evidence supporting the gang enhancements would not be admissible to prove the gang offense. In particular, he claims that, while the prosecution had to show he committed the current offenses for the benefit of a criminal street gang, this "was not required to be proven for the substantive crime" of street gang participation. Alejandrez is correct that this was not required to prove the offense, but it was relevant to the offense, since a defendant who commits a current offense for the benefit of a gang is likely to be a participant in the gang. Alejandrez also claims that, in a separate trial of his substantive offenses, the prosecution's gang expert could not have testified about the origins of the Bulldogs gang or its violent activities. This is not correct. Since the substantive offenses included participation in a gang, the expert's testimony would have been relevant.

Further, some of the gang evidence was cross-admissible for the other offenses. Evidence of gang relatedness is unlike evidence of unrelated priors in that some of it is part of the circumstances of the charged offense itself, even if the charged offense is something other than the offense of gang participation. "A gang enhancement is different from [a] prior conviction.... A prior conviction allegation relates to the defendant's status and may have no connection to the charged offense; by contrast, the criminal street gang enhancement is attached to the charged offense and is, by definition, inextricably intertwined with that offense. So less need for bifurcation generally exists with the gang enhancement than with a prior conviction allegation." (Hernandez, supra, 33 Cal.4th at p. 1048.) In this case, contrary to Alejandrez's claim, there was evidence that he called out the name of a gang, DLG, during the commission of the offenses charged in counts one and two. Two witnesses (not only one, contrary to Alejandrez's contention) testified about this at trial—Officer Derrick Johnson and Annabell Valles. Johnson said Esperanza Garcia told him she heard Alejandrez say "what's up, what's up, this is DLG" as he waved the gun. This hearsay evidence was admissible because it contradicted Garcia's trial testimony that she was already inside the building by the time Alejandrez pulled the gun and did not remember hearing Alejandrez say those things. Valles said she heard Alejandrez yell "Wolfy, DLG, Wolfy, Wolfy." This evidence was relevant to counts one and two because it could have shown Alejandrez's motive for the shooting. Consequently, other evidence about the gang, including the gang expert's testimony about the gang's existence and violent practices, was also relevant to prove counts one and two. In light of this, there was little danger of any prejudice arising from the denial of the motion to bifurcate.

People v. Memory (2010) 182 Cal.App.4th 835, on which Alejandrez relies, is not to the contrary. In that case, there was no evidence that the underlying crime had a gang-related motive. In fact, there was no gang charge or gang-enhancement allegation at all in Memory and the court held that the evidence was not probative on any significant issue and had little purpose but improperly to show criminal disposition and undermine the defendants' credibility. (Id. at p. 838.) The present case is not similar.

Finally, even if the court had been wrong to deny the motion, we would not reverse the judgment, for the mistake would have been harmless under any standard. The jury rejected the prosecution's gang claims. It found that Alejandrez did not commit the present offense for the benefit of a criminal street gang and that he was not guilty of participating in a criminal street gang. There is no genuine chance that merely hearing the gang evidence it rejected caused the jury to find Alejandrez guilty of shooting from a car and assault with a semiautomatic firearm when it would have found him not guilty otherwise. Alejandrez claimed he fired to defend himself against the crowd and that the gang evidence damaged the credibility of this claim. A claim of self-defense, however, would not explain why Alejandrez shot a security guard as he was being driven away after the crowd had gone back inside. The jury had extremely strong grounds to find Alejandrez not credible apart from the gang evidence. We conclude any error was harmless beyond a reasonable doubt. (Chapman v. California (1967) 386 U.S. 18, 24.)

1   (LD 4, pp. 5-8).

2                   2.  Federal Standard.

3           As correctly argued by Respondent, there is no clearly established Federal law which holds

4   that joinder or consolidation of charges may violate the Constitution. In United States v. Lane, 474

5   U.S. 438, 446 n. 8 (1986), the Supreme Court stated in a footnote that "[i]mproper joinder does not, in

6   itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation

7   only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial."

8   However, in Young v. Pliler, the Ninth Circuit noted:

9               Lane considered only the effect of misjoinder under Federal Rule of Criminal Procedure 8, and
            expressly stated that no constitutional claim had been presented. See Lane, 474 U.S. 438, 446 &

10          n. 9, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986). Thus, Lane's broad statement-found in a footnote
            without citation to any legal authority-that misjoinder could only rise to the level of a

11          constitutional violation if it was so prejudicial as to violate due process, was probably dictum.
            Only Supreme Court holdings are controlling when reviewing state court holdings under 28

12          U.S.C. § 2254; Court dicta and circuit court authority may not provide the basis for granting
            habeas relief. Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S.Ct. 1166, 155 L.Ed.2d 144

13          (2003).

14   Young, 273 Fed.Appx. 670, n. 1, 2008 WL 1757564 (9th Cir.2008) (unpublished); see also Collins v.

15   Runnels, 603 F.3d 1127, 1132–33 (9th Cir.2010).

16          In ascertaining what is "clearly established Federal law," this Court must look to the "holdings,

17   as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court

18   decision." Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under §

19   2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the

20   state court renders its decision." Id.  Given that there is no clearly established Federal law in this

21   instance, the Court cannot grant relief, since habeas relief is triggered only when the state court

22   adjudication runs afoul of clearly established federal law.

23          However, even assuming, arguendo, that the Supreme Court's footnote could be considered

24   clearly established Federal law, no constitutional violation occurred in this case.  "Improper joinder

25   does not, in itself, violate the Constitution.  Rather, misjoinder would rise to the level of a constitutional

26   violation only if it results in prejudice so great as to deny a defendant his right to a fair trial."  United

27   States v. Lane, 474 U.S. 438, 446, fn. 8.  Joinder of offenses results in a constitutional violation only if

28   it renders a state trial unfair and violates due process.  Herring v. Meachum, 11 F.3d 374, 377 (2nd Cir.

                                                      7

1993).  A defendant must show that actual prejudice resulted from the events as they unfolded during trial.  Herring, supra, 11 F.3d at 378, citing Opper v. U.S., 348 U.S. 84, 94-95 (1954).  This prejudice is shown if the impermissible joinder had a substantial and injurious effect or influence in determining the jury's verdict.  See Bean v. Calderon, 163 F.3d 1073, 1086 (9th Cir.1998); see also, Spencer v. Texas, 385 U.S. 554, 562 (1967) (while some prejudice may flow from joinder of offenses in criminal offenses, the risk is justified by convenience and guarded against by limiting instructions); Featherstone v. Estelle, 948 F.2d 1497, 1503 (9th Cir. 1991) (consolidation rests in the sound discretion of the state trial court).

                3.  Analysis.

In the instant case, Petitioner has not made the required showing that joinder of Petitioner's substantive charges with his gang enhancement charges resulted in actual prejudice.  At the outset, Respondent maintains that the claim is unexhausted.  The Court agrees.

A petitioner who is in state custody and wishes to collaterally challenge his conviction by a petition for writ of habeas corpus must exhaust state judicial remedies.  28 U.S.C. § 2254(b)(1).  The exhaustion doctrine is based on comity to the state court and gives the state court the initial opportunity to correct the state's alleged constitutional deprivations.  Coleman v. Thompson, 501 U.S. 722, 731 (1991); Rose v. Lundy, 455 U.S. 509, 518 (1982); Buffalo v. Sunn, 854 F.2d 1158, 1163 (9th Cir. 1988).

A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court.  Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 276 (1971); Johnson v. Zenon, 88 F.3d 828, 829 (9th Cir. 1996).  A federal court will find that the highest state court was given a full and fair opportunity to hear a claim if the petitioner has presented the highest state court with the claim's factual and legal basis.  Duncan, 513 U.S. at 365 (legal basis); Kenney v. Tamayo-Reyes, 504 U.S. 1, 112 S.Ct. 1715, 1719 (1992) (factual basis).

Additionally, the petitioner must have specifically told the state court that he was raising a federal constitutional claim.  Duncan, 513 U.S. at 365-66; Lyons v. Crawford, 232 F.3d 666, 669 (9th Cir. 2000), amended, 247 F.3d 904 (2001); Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir. 1999);

Keating v. Hood, 133 F.3d 1240, 1241 (9th Cir. 1998).

Here, ground one is unexhausted because the record does not indicate, and Petitioner has not established, that he ever presented this claim to the California Supreme Court.  Accordingly, it is unexhausted and must be dismissed.

Even were the claim exhausted, however, it would fail on its merits.  As Respondent correctly notes, Petitioner did not request at trial that the substantive gang offense be bifurcated from the remaining four charges, thus making the gang evidence admitted for that substantive charge relevant also to the gang enhancements.  Absent Petitioner's request to bifurcate the substantive charge, no reason existed for the trial court to then bifurcate only the enhancements.  Moreover, as the 5th DCA observed, gang evidence was also held to be admissible as to other substantive charges for impeachment purposes and as evidence of motive.  Thus, the state court's adjudication of this issue was not objectively unreasonable.

Additionally, even if the decision were error, it was harmless under Brecht.  The jury acquitted Petitioner of both the substantive gang charge and the gang enhancements, but nevertheless found him guilty of the other substantive charges.  Clearly, the gang evidence, although prejudicial, did not influence the jury sufficiently to convict him of the substantive gang charge or the enhancements, so it is difficult to imagine how that same evidence could have swayed the jury's decision against Petitioner on the remaining substantive charges.  In sum, the trial court's decision not to bifurcate the substantive gang charge did not have a "substantial and injurious" effect on the outcome of the trial.  Brecht, 507 U.S. at 637.  Thus, the error, if any, was harmless.

B.  Failure to Stay Sentence in Count Two

Petitioner next contends that the trial court erred in failing to stay the sentence as to Count 2. This contention is also without merit.

1.  The 5th DCA's Opinion.

The 5th DCA rejected Petitioner's claim as follows:

Alejandrez contends that his sentence for count two, assault with a semiautomatic firearm, should be stayed under section 654 because it was part of the same course of conduct and had the same intent as count one, shooting from a car. Defendant is incorrect. Section 654 does not require a stay where the two offenses arising from a single act or course of conduct had separate victims. The victim of shooting from a car was the security guard. The separate

victims of the assault with a semiautomatic firearm were the wedding guests who were standing outside when Alejandrez began waving the gun around but before he got in the car.

Section 654 provides, in part, as follows:

> "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."

This statute bars double punishment for a single criminal act or for a single indivisible course of conduct in which the defendant had only one criminal intent or objective, although the conduct violated two statutes. (People v. Bauer (1969) 1 Cal.3d 368, 376; In re Ward (1966) 64 Cal.2d 672, 675–676; Neal v. State of California (1960) 55 Cal.2d 11, 19.) We review under the substantial-evidence standard the court's factual finding, implicit or explicit, of whether or not there was a single criminal act or a course of conduct with a single criminal objective. (People v. Coleman (1989) 48 Cal.3d 112, 162; People v. Ratcliff (1990) 223 Cal.App.3d 1401, 1408.) As always, we review the trial court's conclusions of law de novo. (Hill v. City of Long Beach (1995) 33 Cal.App.4th 1684, 1687.)

In this case, there was no error even if the two convictions were based on a single course of conduct because the two offenses had separate victims. Section 654 does not bar multiple punishments where multiple crimes of violence arising from a single course of conduct had separate victims. (People v. Miller (1977) 18 Cal.3d 873, 885–886, overruled on other grounds in People v. Oates (2004) 32 Cal.4th 1048, 1067, fn. 8; People v. Young (1992) 11 Cal.App.4th 1299, 1311–1312.) The evidence supported a finding that a group of wedding guests was outside when Alejandrez displayed the gun and possibly also during the first series of shots. Even if the shooting had not started, the brandishing and pointing formed the basis of the assault on the guests. At least one victim, the guard, remained outside when Alejandrez shot from the car. Alejandrez's crimes had as many as 16 victims: Up to 15 wedding guests were victims of assault with a semiautomatic firearm and one security guard was the victim of shooting from a car.

In his reply brief, Alejandrez argues that the crimes did not have multiple victims because the evidence did not rule out the possibility that some of the wedding guests were still outside when he fired from the car, so it is "inaccurate to characterize [the guard] as the only victim of Count 2." This argument is illogical and does not support Alejandrez's position. First, the People characterize the guard as the victim of count one, not count two. Second, to overcome the multiple-victims doctrine, Alejandrez would have to show that both offenses had a single victim, not that one of them had multiple victims.

(LD 4, pp. 8-9).

        2.  Analysis.

Preliminarily, Respondent again contends that the claim has never been presented to the California Supreme Court, and the record bears this fact out. Accordingly, the claim is unexhausted and must be dismissed.

Respondent also contends, and the Court agrees, that this sentencing issue raises only issues of state law and is thus not cognizable in federal habeas proceedings. Issues of state law sentencing errors

generally are not cognizable on federal habeas review, unless the petitioner claims a deprivation of due process or equal protection due to the misapplication of the sentencing law. See Fetterly v. Paskett, 997 F.2d 1295, 1300 (9th Cir. 1993), cert. denied, 115 S.Ct 290 (1994); Featherstone v. Estelle, 948 F.2d 1497, 1500 (9th Cir. 1991); Estelle v. McGuire, 112 S. Ct. 475, 480 (1991) (holding that "it is not the province of a federal habeas court to reexamine state court determinations on state law questions"); Miller v. Vasquez, 868 F. 2d 1116, 1118-19 (9th Cir. 1989) (refusing to address sentence enhancement claim).  Moreover, "[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." James v. Borg, 24 F.3d 20, 29 (9th Cir.1994).

A criminal defendant is entitled to due process at sentencing. Gardner v. Florida, 430 U.S. 349, 358, 979 S. Ct. 1197 (1977). Federal courts must defer to a state court's interpretation of state sentencing laws. Bueno v. Hallahan, 998 F. 2d 86, 88 (9th Cir. 1993). "Absent a showing of fundamental unfairness," a state court's misapplication of its own sentencing laws does not justify federal habeas relief." Christian v. Rhode, 41 F. 3d 461, 469 (9th Cir. 1994). As a threshold matter, the Court must determine whether Petitioner has alleged that his sentence is fundamentally unfair.

Rather than contending that his sentence is "fundamentally unfair," Petitioner's claim is a technical one, i.e., that because the assault with a semiautomatic firearm was part of the same course of conduct and had the same intent as the charge of shooting from a car, California law, i.e., Pen. Code § 654, required that it be stayed at sentencing.  Framed in this way, the claim raises only a state law question, and, as mentioned above, issues of state law are not cognizable on federal habeas review. Estelle v. McGuire, 502 U.S. 62, 67 (1991)("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'"), quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Gilmore v. Taylor, 508 U.S. 333, 348-349 (1993)(O'Connor, J., concurring)("mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas").   Moreover, "[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." James v. Borg, 24 F.3d 20, 29 (9th Cir.1994).

Indeed, federal courts are bound by state court rulings on questions of state law. Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir.), cert. denied, 493 U.S. 942 (1989). "[T]he availability of a claim under state law does not of itself establish that a claim was available under the United States

Constitution." <u>Sawyer v. Smith</u>, 497 U.S. 227, 239 (1990), *quoting,* <u>Dugger v. Adams</u>, 489 U.S. 401, 409 (1989). <u>Tinsley v. Borg</u>, 895 F.2d 520, 530 (9th Cir.1990), *cert. denied*, 498 U.S. 1091 (1991) ("incorrect" evidentiary rulings are not the basis for federal habeas relief).  Here, the question of whether, under state law, the trial court should have stayed Count 2 is solely a question of state law that is not properly brought in these habeas proceedings.

However, even assuming, arguendo, that it is a proper habeas claim that is fully exhausted, it would nevertheless fail on the merits because Petitioner has not shown a federal constitutional violation.  As Respondent correctly points out, the 5th DCA affirmed the trial court's failure to stay the sentence in Count 2 because § 654 expressly provides for "multiple punishments where multiple crimes of violence arising from a single course of conduct had separate victims."  (LD 4, p. 9). Clearly, the record supports the conclusion that multiple victims were involved based on the facts recounted previously.  Accordingly, the trial court correctly applied § 654 to the facts in this case and did not stay the sentence in Count 2.  Thus, Petitioner cannot show "fundamental unfairness" in the state court's misapplication of its own sentencing laws.  <u>Christian v. Rhode</u>, 41 F. 3d at 469. Hence, the claim must be rejected on its merits.

### C.  The Instruction On Shooting From A Car

Petitioner also contends that the jury was instructed improperly on the intent required to convict Petitioner on the charge of shooting from a car.  This contention too is without merit.

#### 1.  The 5th DCA's Opinion.

The 5th DCA rejected Petitioner's claim as follows:
Alejandrez argues that shooting from a car is a specific-intent offense because section 12034, subdivision (c), requires the perpetrator to shoot specifically "at another person other than an occupant of" the car. He argues that the court erred because it instructed the jury that the offense requires only a general criminal intent.

In determining the legal correctness of the trial court's instruction on intent, we conduct an independent review. (<u>People v. Alvarez</u> (1996) 14 Cal.4th 155, 220 (<u>Alvarez</u> ).) Even if the instruction were erroneous, the error is not a ground for reversal unless it was prejudicial. The error is prejudicial if there is a reasonable probability that it affected the outcome of the trial. (Ibid.)

Where the crime is one of specific intent, a trial court has a sua sponte duty to give an instruction on the union of the culpable act and the required specific intent. (<u>Alvarez, supra</u>, 14 Cal.4th at p. 220.) If instructional error affects a defendant's substantial rights, an appellate court can review the instruction although no objection was made in the trial court. (§ 1259.) For these reasons, we reject the People's argument that Alejandrez waived this issue by failing to request a specific-intent instruction or object to the instructions the court gave.

A general intent to commit a crime is simply the intent to do the act that constitutes the crime. A specific intent is an intent not just to do the act constituting the crime but also to do a further act or achieve a future consequence. (People v. Verlinde (2002) 100 Cal.App.4th 1146, 1166–1167; People v. Atkins (2001) 25 Cal.4th 76, 86.) In People v. Hernandez (2010) 181 Cal.App.4th 1494, another panel of this court held that a violation of section 12034, subdivision (c), is a general-intent crime. Extending the reasoning found in cases discussing section 246 (shooting at an inhabited dwelling), the court opined that the offense of shooting from a car at another person is accomplished-and a victim has been shot "at"—even if the defendant shoots only with conscious indifference regarding whether the victim will be hit. It is not necessary for the defendant to specifically intend the consequence that the person be hit. It follows that a violation of section 12034, subdivision (c), can be committed without a specific intent. (People v. Hernandez, supra, at pp. 1500–1501.) We agree with this reasoning.

Alejandrez argues that, even if section 12034, subdivision (c), does not require a specific intent that a victim be hit by a bullet, it at least requires a specific intent "that the bullets go toward another person." If "toward" a person means in a person's general direction, then we agree that the statute requires the defendant to intend to fire toward a person. If a person is standing to the perpetrator's north and the perpetrator fires to the south, the gun would not have been fired at (or toward or in the general direction of) that person. We do not agree, however, that this means a specific intent is required. As we have said, a specific intent involves the intent to do a further act or achieve a future consequence. Firing in a person's general direction does not necessarily involve intending any further act or future consequence. The defendant might only be consciously indifferent about what happens next.

Alejandrez says rejecting his interpretation would mean the phrase "at another person other than an occupant of" the car is surplusage, and there would be no effective difference between section 12034, subdivision (c) and section 12034, subdivision (d), which omits that phrase and imposes a lesser punishment. Again, we disagree. To violate section 12034, subdivision (d), a perpetrator need only "willfully and maliciously discharge[ ] a firearm from a motor vehicle...." There need not be any person in whose general direction the gun is fired.

Alejandrez argues that the cases finding a violation of section 246 to be a general-intent crime, on which Hernandez relied, were wrongly decided. His view is that the required intent for shooting "at" an occupied building or inhabited dwelling must be at least the specific intent that the bullets go toward the building or dwelling. We disagree with this for the same reasons we disagree with Alejandrez's analogous argument about the meaning of "at another person." A general intent to shoot in the general direction in question is all that is required.

In addition to the general-intent instruction, the court instructed the jury with CALCRIM No. 968, which defines the offense. It stated that, to find Alejandrez guilty, it had to find that he "willfully and maliciously shot a firearm from a motor vehicle" and shot "at another person who was not in a motor vehicle...." These instructions expressed the necessary intent. The additional instruction that count one required a general criminal intent was correct. There was no error.

(LD 4, pp. 9-11).

### 2. Federal Standard.

The issue of whether a jury instruction is a violation of state law is neither a federal question nor a proper subject for habeas corpus relief. Estelle v. McGuire, 502 U.S. 62, 68 (1991). ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' "), *quoting* Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Gilmore v. Taylor, 508 U.S. 333, 348-49 (1993) (O'Connor, J.,

13

concurring) ("mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas"). Indeed, federal courts are bound by state court rulings on questions of state law. Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir.), *cert. denied*, 493 U.S. 942 (1989). In addition, "the availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution." Sawyer v. Smith, 497 U.S. 227, 239 (1990), *quoting,* Dugger v. Adams, 489 U.S. 401, 409 (1989).

In reviewing an ambiguous instruction, the inquiry is not how reasonable jurors could or would have understood the instruction as a whole; rather, the court must inquire whether there is a "reasonable likelihood" that the jury has applied the challenged instruction in a way that violates the Constitution. See Estelle v. McGuire, 502 U.S. at 72 & n. 4; Boyde v. California, 494 U.S. 370, 380, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990).  However, a determination that there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution establishes only that an error has occurred. See Calderon v. Coleman, 525 U.S. 141, 146 (1998). If an error is found, the court also must determine that the error had a substantial and injurious effect or influence in determining the jury's verdict before granting habeas relief. See id. at 146–47 (citing Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).

In determining whether instructional error warrants habeas relief, a habeas court must consider "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process' ... not merely whether 'the instruction is undesirable, erroneous, or even universally condemned.'"  Henderson v. Kibbe, 431 U.S. 145, 154 (1977) (*quoting* Cupp v. Naughten, 414 U.S. 141, 146-47 (1973)); California v. Roy, 519 U.S. 2, 5 (1996) (challenge in habeas to the trial court's jury instructions is reviewed under the standard in Brecht v. Abrahamson, 507 U.S. at 637--whether the error had a substantial and injurious effect or influence in determining the jury's verdict.).  The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. Hanna v. Riveland, 87 F.3d 1034, 1039 (9th Cir. 1996).

In a criminal case, an evidentiary device must not undermine the fact-finder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt.

County Court of Ulster County, N. Y. v. Allen, 442 U.S. 140, 156 (1979); In re Winship, 397 U.S. 358, 364 (1970).  A permissive inference is one of the most common evidentiary devices, which allows, but does not require, the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind on the defendant.  Ulster, 442 U.S. at 157.  "Because this permissive presumption leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the 'beyond a reasonable doubt' standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference."  Id., 442 U.S. at 157; U.S. v. Warren, 25 F.3d 890, 897 (9th Cir. 1994); Sterling v. Roe, 2002 WL 826807 (N.D. Cal. 2002).  "A permissive inference violates the Due Process Clause only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury."  Francis v. Franklin, 471 U.S. 307, 314-315 (1985).

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  In re Winship, 397 U.S. 358, 364 (1970).  The United States Supreme Court has held that "the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof.  Rather, taken as a whole, the instructions must correctly convey the concept of reasonable doubt to the jury."  Victor v. Nebraska, 511 U.S. 1, 5 (1994).  This standard reduces the chance that an innocent person will be conviction.  In re Winship, 397 U.S. at 362. Winship does not require that every single fact upon which the jury relies be proven to a reasonable doubt.  Many facts not proven to that standard may, collectively, allow the jury to infer that an element of the crime is proven beyond a reasonable doubt.  To enforce Winship's rule, judges must instruct juries that they cannot return a guilty verdict unless the government has met this burden.  Cool v. United States, 409 U.S. 275, 278 (1972).  A jury conviction based upon an impermissibly low quantum of proof violates the jury trial guarantee of the Sixth Amendment.  Sullivan v. Louisiana, 508 U.S. 275, 278 (1993).  A judge can violate a defendant's rights by giving an instruction that undercuts the force of an otherwise proper beyond-a-reasonable-doubt instruction.  See, e.g., Cool, 409 U.S. at 102-103; Sandstrom v. Montana, 442 U.S. 510, 521 (1979).

15

1   When a jury instruction is susceptible to a reading that would render the verdict unconstitutional

2   and another that would generate a proper verdict, the reviewing court considers the challenged

3   instruction in light of the full jury charge and in the context of the entire trial.  See Naughten, 414 U.S.

4   at 145-147(consider charge as whole); United States v. Park, 421 U.S. 658, 675 (1975)(consider

5   context of whole trial).  The court must then decide whether there is a reasonable likelihood that the

6   jury applied the challenged instruction in an unconstitutional manner.  Estelle, 502 U.S. at 72.  A

7   verdict remains valid if a jury instruction only tangentially undercut a proper beyond-a-reasonable-

8   doubt instruction.  Naughten, 414 U.S. at 149-150.

9          3. Analysis.

10   Petitioner contended in his direct appeal that the state trial court improperly instructed the jury

11   that the crime of shooting from a car was a general intent crime rather than a specific intent crime.

12   The 5th DCA, construing California law, concluded that the trial court was correct in instructing the

13   jury on general intent rather than specific intent.  As discussed previously, this Court is bound by a

14   state court's interpretation and application of its own laws. Indeed, federal courts are bound by state

15   court rulings on questions of state law. E.g., Oxborrow v. Eikenberry, 877 F.2d at 1399; Bueno v.

16   Hallahan, 998 F. 2d at 88.

17   Given that the state court correctly applied its own laws, no error occurred and there could

18   have been no error which so infected the entire trial that it would amount to a federal due process

19   violation.  See Henderson v. Kibbe, 431 U.S. at 154.  Accordingly, the state court decision is not

20   contrary to nor an unreasonable application of clearly established federal law (28 U.S.C. § 2254(d))

21   and the claim should be denied.

22       D. Insufficient Evidence of Great Bodily Injury

23   Petitioner next claims that insufficient evidence was presented at trial to establish that the

24   security guard suffered great bodily injury.  This contention too is without merit.

25          1. The 5th DCA's Opinion.

26   The 5th DCA rejected Petitioner's claim as follows:

27   Alejandrez argues that there was insufficient evidence to support the jury's finding that he
inflicted great bodily injury on the security guard he shot in the leg. When the sufficiency of the
evidence is challenged on appeal, "the court must review the whole record in the light most
favorable to the judgment to determine whether it discloses substantial evidence—that is,

28   evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact

could find the defendant guilty beyond a reasonable doubt." (People v. Johnson (1980) 26 Cal.3d 557, 578; see also People v. Carter (2005) 36 Cal.4th 1114, 1156.)

Our Supreme Court has stated:

> "It is well settled that the determination of great bodily injury is essentially a question of fact, not of law. ' "Whether the harm resulting to the victim constitutes great bodily injury is a question of fact for the jury. [Citation.] If there is sufficient evidence to sustain the jury's finding of great bodily injury, we are bound to accept it, even though the circumstances might reasonably be reconciled with a contrary finding." ' [Citations.]" (People v. Escobar (1992) 3 Cal.4th 740, 750.)

Section 12022.53, subdivision (d), the enhancement statute under which Alejandrez was charged, incorporates the definition of great bodily injury found in section 12022.7, subdivision (f): "a significant or substantial physical injury." In this case, the jury was instructed with CALCRIM No. 3149: "Great bodily injury means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm." Alejandrez does not question the correctness of these instructions.

The security guard testified that a bullet hit him in the lower part of his right leg. He felt pain in the leg and saw it bleeding. An event manager at Las Palmas Masonic Center testified that he saw the guard "laying there in a pool of blood." An ambulance took the guard to a hospital emergency room, where he stayed for five or six hours. An emergency room doctor testified that the bullet nearly went all the way through the guard's calf: "It was through and through except it didn't come all the way through the other side. The bullet was just under the skin." It was "pushing against the skin, but not breaking the skin." It "had gone all the way through the leg, but not quite exiting the leg." The doctor anesthetized the area, made a small incision, and removed the bullet with forceps. Then he irrigated and bandaged the wound. The guard was allowed to leave the hospital after this treatment. He testified that follow-up treatments continued for about a year. No evidence of the nature of the follow-up treatments was presented.

This issue requires little analysis. Applying its common sense and general background knowledge, the jury could reasonably find that a bullet through (or nearly through) a leg is a significant and substantial injury, not a minor or moderate one.

Alejandrez cites People v. Martinez (1985) 171 Cal.App.3d 727, 735–736 and People v. Caudillo (1978) 21 Cal.3d 562, 588–589, overruled on other grounds by People v. Martinez (1999) 20 Cal.4th 225, 237, footnote 6, in which evidence of superficial lacerations were held not sufficient to prove great bodily injury. These cases do not support Alejandrez's view, for the security guard sustained not a superficial laceration but a gunshot wound that penetrated almost all the way through his leg. Alejandrez also cites People v. Nava (1989) 207 Cal.App.3d 1490, 1497–1498, in which the Court of Appeal held it was error to instruct the jury that a bone fracture was a great bodily injury as a matter of law. Nava is not on point, since the court here did not instruct the jury that the gunshot wound was a great bodily injury as a matter of law. Finally, Alejandrez cites People v. Le (2006) 137 Cal.App.4th 54, 57–59, in which it was held that sufficient evidence supported a great-bodily-injury finding where a bullet passed through the victim's left leg and came to rest in his right, resulting in a 24–hour hospital stay and seven weeks of limping. Alejandrez points out that, in People v. Cross (2008) 45 Cal.4th 58, 64, the Supreme Court cited Le with approval. He says this "suggests that a simple soft tissue injury, without resulting disability for a number of weeks, would not qualify as great bodily injury." We disagree. There is nothing in Le or Cross remotely suggesting that the facts of Le stand for some kind of minimum qualifications for a finding of great bodily injury.

The People cite two cases involving gunshot wounds of a severity comparable to that at issue here, in which findings of great bodily injury were upheld on appeal: People v. Mendias (1993) 17 Cal.App.4th 195, 201, 205–206 (gunshot wound to upper thigh; victim treated and held in

hospital overnight; pain gone by time of trial); People v. Lopez (1986) 176 Cal.App.3d 460, 462, 463, footnote 5, 463–465 (one victim shot in buttock and another victim shot through leg; no bullet fragments remained in victims' bodies and no evidence of medical treatment was presented). We agree with the People that these cases were decided correctly and support the conclusion that there was sufficient evidence of great bodily injury in this case.

(LD 4, pp. 12-14).

        2.  Federal Standard.

        The law on sufficiency of the evidence is clearly established by the United States Supreme Court.  Pursuant to the United States Supreme Court's holding in Jackson v. Virginia, 443 U.S. 307, the test on habeas review to determine whether a factual finding is fairly supported by the record is as follows: "[W]hether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319; see also Lewis v. Jeffers, 497 U.S. 764, 781 (1990).

        In Cavazos, v. Smith, __U.S. __, 132 S.Ct. 2 (2011), the United States Supreme Court further explained the highly deferential standard of review in habeas proceedings, by noting that Jackson,

> "makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable." Renico v. Lett, 559 U.S. ——, ——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010) (internal quotation marks omitted).
>
> Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.

Cavazos, 132 S.Ct. at 3[2].  Moreover, in applying the AEDPA's deferential standard of review, this Court must also presume the correctness of the state court's factual findings.  28 U.S.C. § 2254(e)(1); Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986).

        3.  Analysis.

        Initially, as with Grounds One and Two, Respondent argues that the claim is unexhausted.  For

---

[2] To the extent that the 5th DCA's opinion does not expressly cite the Jackson v. Virginia standard in analyzing the sufficiency claims herein, it must be noted that, long ago, the California Supreme Court expressly adopted the federal Jackson standard for sufficiency claims in state criminal proceedings.  People v. Johnson, 26 Cal.3d 557, 576 (1980).  Accordingly, the state court applied the correct legal standard, and this Court's only task is to determine whether the state court adjudication was contrary to or an unreasonable application of that standard.

the same reasons set forth previously, the Court agrees.  Petitioner failed to raise this issue before the

California Supreme Court and thus the claim is unexhausted.  It should be rejected on that ground.

However, the claim also fails on its merits.  While the bullet wound to the security guard's leg

was not as dramatic or life-threatening as it may have been had the guard been shot in another part of

his body, that fact does little to show that the bodily injury was not serious.  The uncontroverted

evidence at trial established that the guard's leg wound bled into a "pool of blood," that the bullet

nearly went through the guard's entire leg, that the wound required surgery to remove the bullet, thus

requiring the guard to remain in the emergency room for hours, and that he continued to receive

treatment for an entire year following his injury.  (1 RT 47; 48; 81; RT 3 605-606).

The 5th DCA engaged in an exhaustive analysis of California case law and concluded that, based

upon similar California cases finding leg wounds to constitute serious bodily injury, sufficient evidence

of "serious bodily injury" had been presented.  To the extent that Petitioner contends that the 5th DCA

failed to properly apply its own state laws, i.e., the interpretation of what constitutes "serious bodily

injury," that is not a proper federal habeas claim and, in any event, this Court is bound by the state's

interpretation of its own laws.  Oxborrow v. Eikenberry, 877 F.2d at 1399.  To the extent that Petitioner

is contending that the state of evidence of serious bodily injury was so lacking that it rose to the level of

a due process violation, his claim is, as discussed above, entirely meritless.

E.  Abstract Of Judgment

Finally, Petitioner claims that a clerical error in the abstract of judgment violated his due

process rights.  This contention too is without merit.

1.  The 5th DCA's Opinion.

The 5th DCA addressed Petitioner's claim as follows:

> The abstract of judgment states that, in addition to the indeterminate sentence of 25 years to life,
> Alejandrez received a sentence of life with the possibility of parole for count one. The People
> concede that the court imposed the sentence of 25 years to life but did not impose a sentence of
> life with the possibility of parole, so the abstract of judgment should be amended to remove the
> latter sentence. We agree and order the abstract be corrected.

(LD 4, p. 14).

2.  Analysis.

Respondent contends that the claim is unexhausted.  The Court agrees that Petitioner's failure

to exhaust provides an independent basis on which to reject this claim.  However, the claim is also moot.  The case or controversy requirement of Article III of the Federal Constitution deprives the Court of jurisdiction to hear moot cases.  <u>Iron Arrow Honor Soc'y v. Heckler</u>, 464 U.S. 67, 70 (1983); <u>N.A.A.C.P., Western Region v. City of Richmond</u>, 743 F.2d 1346, 1352 (9th Cir. 1984).  A case becomes moot if the "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  <u>Murphy v. Hunt</u>, 455 U.S. 478, 481 (1982).  The Federal Court is "without power to decide questions that cannot affect the rights of the litigants before them."  <u>North Carolina v. Rice</u>, 404 U.S. 244, 246 (1971) *per curiam*, *quoting* <u>Aetna Life Ins. Co. v. Hayworth</u>, 300 U.S. 227, 240-241 (1937). Respondent has lodged with the Court an amended abstract of judgment issued by the trial court correcting the error noted by the 5th DCA in its opinion. (LD 10).  Petitioner does not contend in his Traverse that the issue remains unresolved.  Accordingly, Petitioner has already received the relief he sought; hence, the Court recommends that this ground for relief be denied as moot.

## **RECOMMENDATION**

Accordingly, the Court RECOMMENDS that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1), be DENIED with prejudice.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within 21 days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the Objections shall be served and filed within ten <u>court</u> days after service of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).

///

///

///

///

20

The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

    Dated:   **November 10, 2014**          **/s/ Jennifer L. Thurston**
                                                  UNITED STATES MAGISTRATE JUDGE